```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK B. ARONSON, Individually )
on behalf of All Persons      )
Similarly Situated,           )
                              )
          Plaintiff,          )
                              )
     v.                       )     Civil Action No. 04-705
                              )
CAPITAL ONE BANK,             )     Judge Cercone
THE WESTMORELAND AGENCY, INC.,)     Magistrate Judge Hay
                              )
          Defendants.         )
```

## REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully recommended that the Motion to Compel Arbitration and Stay Action (Doc. 18) submitted on behalf of the Defendants be granted.

REPORT

Plaintiff, Mark B. Aronson ("Aronson"), filed this proposed consumer class action against Capital One F.S.B., Capital One Services, Inc., and the Westmoreland Agency, Inc., alleging violations of the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"). By agreement of the parties, Aronson amended the complaint to name as defendants only Capital One Bank ("Capital One") and the Westmoreland Agency, Inc. ("Westmoreland"). Defendants answered the amended complaint asserting, among others, the affirmative defense of the existence of an agreement between the parties to arbitrate their disputes.

Thereafter, Defendants formally requested that Aronson submit his claims to arbitration. Aronson did not submit to arbitration.

Presently before the court is Defendants' motion to compel arbitration and to stay this action. The following facts are not disputed.

Capital One is a Virginia state-chartered credit card bank, the business of which includes issuing credit cards. Aronson is one of Capital One's cardholders and has been since 1999, when they entered into a written Customer Agreement. See Affidavit of Glenn LeBlanc ("LeBlanc Aff.")(filed at Doc. 19), ¶¶ 1 & 6, and Ex. A.

In or around October 2001, Capital One sent Aronson a Notice that the terms of the Customer Agreement would be amended to include an Arbitration Provision.[1] The Notice offered Aronson

---

[1] The Arbitration Provision provides, in pertinent part, as follows:

    You and we agree that either you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration.
    *         *         *
"We," "us," and "our" mean the owner of your account (Capital One Bank or Capital One, F.S.B.), its parent, and their direct and indirect subsidiaries and affiliates . . .
"Claim" means any claim, controversy, or dispute of any kind or nature between you and us.
  a.  This definition includes, without limitation, any Claim that in any way arises from or relates to:
- this [Customer] Agreement and any of its terms . . .
- this Arbitration Provision (including whether any Claim is subject to arbitration)
    *     *     *
- any other matters relating to your account or your relationship with us.
  b.  This definition also includes, without limitation, any Claim:
- regardless of how or when it is brought . . .

several months to consider the opportunity to reject the amendment.  The Notice informed Aronson that the Arbitration Provision would become effective on January 31, 2002.  The Notice further advised Aronson that if he did not want the Arbitration Provision to become part of the Customer Agreement, Aronson was required to send Capital One the "Arbitration Rejection Coupon" enclosed with the Notice.  Id. at Ex. B.

Aronson did not return the Arbitration Rejection Coupon.  Aronson has continued to use his Capital One credit card during the years since the Arbitration Provision has been in effect.  LeBlanc Aff., ¶¶ 6-9.

During the 1980's and early 1990's, Aronson had a credit card with Chase Manhattan Bank ("Chase Account").  Aronson failed to pay the Chase Account as agreed and the debt was charged off by Chase on January 22, 1992.  The Chase Account was subsequently sold and/or transferred to various collection agencies, including Westmoreland.  Westmoreland is a subsidiary of Capital One Financial Corporation, as is Capital One.  It is the actions of the Defendants in their collection efforts on the Chase Account which form the basis of Aronson's amended complaint.

---

     *   *   *
- now in existence or that may arise in the future, regardless of when the facts and circumstances that give rise to the Claim occurred or when the Claim accrued;
- made as part of a class action . . .

LeBlanc Aff., Ex. B.

*Discussion*

The parties agree that the federal Arbitration Act, 9 U.S.C. §§ 1-13, applies in this case. The Arbitration Act "empowers district courts to compel arbitration when one of the parties to a written arbitration agreement petitions the court alleging the failure, neglect, or refusal of the other party to arbitrate." Trott v. Paciolla, 748 F.Supp. 305, 307 (E.D. Pa. 1990). Both parties acknowledge that the Arbitration Act established a "strong federal policy in favor of the resolution of disputes through arbitration." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983).

In determining whether to compel arbitration, the court's inquiry is narrow, focusing on whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the substantive scope of that agreement. Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc., 247 F.3d 44, 54-55 (3d Cir. 2001). If both criteria are satisfied, the court must compel arbitration and lacks discretion to do otherwise. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

The Defendants argue that both criteria are met here, thus mandating that the dispute be sent to arbitration. Aronson

asserts that no valid agreement to arbitrate exists[2] or, if one does exist, it is unconscionable and unenforceable.

"Arbitration is a matter of contract between the parties and a judicial mandate to arbitrate must be predicated upon an agreement to that effect." Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 52 (3d Cir. 1980)(citations omitted). Stated differently, the Arbitration Act "does not require parties to arbitrate when they have not agreed to do so." Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junion University, 489 U.S. 468, 478 (1989). A federal court must look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997). Although not addressed by the parties, the underlying Customer Agreement indicates it is to be governed by Virginia law. See LeBlanc Aff., Ex. A.[3]

---

[2] Even though Aronson couches his arguments in terms of the "validity" of the arbitration agreement, review of his brief suggests it is actually the applicability of the arbitration argument to his particular circumstances that he is challenging primarily. Because he does attack the formation of the agreement itself on one occasion, however, we will address both the validity and scope of the agreement.

[3] Plaintiff relies on Pennsylvania law which, it appears, does not differ appreciably from Virginia law on issues of contract law.

While state law governs the substantive principles of any dispute, federal law governs the interpretation of the arbitration agreement. Medtronic AVE, Inc., 247 F.3d at 54 (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. at 943).

A motion to compel arbitration is viewed as a summary judgment motion where the parties dispute the making of the arbitration agreement. Lepera v. ITT Corp.,1997 WL 535165, * 3 (E.D.Pa. 1997)(citing Par-Knit, 636 F.2d at 54). As such, the court will accord the non-moving party the benefit of all doubts and reasonable inferences. Id.; see also Fed.R.Civ.P. 56(c). "Only when there is no genuine issue of material fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." Par-Knit, 636 F.2d at 54.

The Defendants contend that a valid arbitration agreement exists as evidenced by the following: (1) Aronson was sent the Notice that the terms of his Customer Agreement with Capital One would be amended to include an Arbitration Provision unless he rejected the amendment by returning the Arbitration Rejection Coupon; (2)  Aronson chose not to return the Arbitration Rejection Coupon and thereby accepted the amendment to his Customer Agreement, which requires arbitration of any matter relating to Aronson's relationship with the Defendants; and (3)

6

Aronson has continued to use his Capital One credit card during the years since the amended Customer Agreement became effective.

In claiming that there is no "valid" agreement here, Aronson does not dispute the Defendants' evidence referenced above and has not presented any evidence to the contrary. Although he summarily concludes that he has submitted "persuasive evidence," Pltf.'s Br. at unn. 10, that he did not agree to the amendment of his Customer Agreement, at most, Aronson has presented an affidavit wherein he states only that he does not recall receiving the Notice regarding the amendment of his Customer Agreement with Capital One. Affidavit of Mark B. Aronson, ¶ 2. Aronson does not dispute that the Notice was mailed to him, as established by Mr. LeBlanc. Aronson does not dispute that the Notice was received by him, which may presumed from Mr. LeBlanc's statements regarding the mailing of the Notice. See generally, Marsh v. First USA Bank, N.A., 103 F.Supp.2d 909, 918 (N.D. Tex. 2000). ("[A] letter properly addressed, stamped and mailed may be presumed to have been received by the addressee in the due course of mail."). As well, Aronson does not dispute that he did not return the Arbitration Rejection Coupon. In our view, Aronson's lack of recall concerning receipt of the Notice does not establish a genuine issue of material fact concerning the validity of the arbitration agreement.

Next, Aronson claims that he cannot be compelled to arbitrate his claims against the Defendants concerning the charged-off debt now owned by them because there was never an arbitration agreement in connection with his Chase Account. Aronson Aff., ¶ 3. This fact, however, is irrelevant. Chase is not a party to the litigation and none of the allegations in the amended complaint concerns Chase's activities. Thus, the terms of any prior contractual relationship Aronson had with Chase are simply not relevant to the question of whether a valid arbitration agreement exists between Aronson and Capital One and if so, whether the specific dispute here falls within the scope of that agreement.

Alternatively, Aronson argues that the Capital One Arbitration Provision is invalid because, by its terms, it applies only to his Capital One credit card account and cannot encompass the Chase Account. This argument, however, does not concern the "validity" of the arbitration provision or agreement; indeed, it presumes a valid agreement. Rather, this argument goes to the question of whether the dispute falls within the scope of the arbitration agreement. Capital One argues that it does. Capital One points to the terms of the agreement which state that it applies to "any claim . . . or dispute of any kind or nature" between Aronson and Capital One concerning "any . . . matters relating to [Aronson's] account or [his] relationship

with [Capital One and its subsidiaries]." LeBlanc Aff., Ex. B. As previously noted, Westmoreland is a subsidiary and thus, would be included by definition. Defendants argue that when considering similarly-worded arbitration clauses, courts have held that all disputes between the parties must be arbitrated even where the disputes do not involve the transaction that gave rise to the contract containing the arbitration provision. See, e.g., Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 569-71 (4th Cir. 1998); Cash Converters USA, Inc. v. Burns, 1999 WL 98345, * 8 (N.D. Ill. 1999); Zink v. Merrill Lynch Pierce Fenner & Smith, Inc., 13 F.3d 330, 332 (10th Cir. 1993).

Defendants also note that the question of whether the amended Customer Agreement is applicable to Aronson's claims is a question that must be arbitrated since under the unambiguous terms of the agreement, "Claim" is defined to include "whether any Claim is subject to arbitration." LeBlanc Aff., Ex. B; see also, AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986)(Where the parties "clearly and unmistakably" agree that the arbitrator will decide issues such as whether an arbitration agreement encompasses a certain claim, that issue must be sent to arbitration.); First Options of Chicago, Inc., 514 U.S. at 944 (Courts should not assume that the parties agreed to arbitrate the question of arbitrability absent clear and unmistakable evidence that they did so.). In our view,

the terms of the Arbitration Provision "clearly and unmistakably" evidence an agreement to arbitrate arbitrability. Thus, this matter is properly decided by arbitration.

Further, to the extent that there is any doubt about whether Aronson's claims fall within the scope of the Arbitration Provision, such doubt should be resolved in favor of arbitration. Moses H. Cone Memorial Hosp., 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); see also PaineWebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)(In determining whether a dispute falls within the scope of the agreement, the court must apply a presumption of arbitrability such that arbitration should not be denied unless the court can state "'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"(quoting United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83 (1960)).

In the only true attack on the validity of the arbitration agreement, Aronson argues that the method by which Capital One attempted to amend the terms of the Customer Agreement, that is, without an affirmative assent on his part, renders the agreement

invalid. Aronson relies on the case of Myers v. MBNA America, 2001 WL 965063 (D. Mont. 2001). As Capital One did in the instant case, MBNA in the Myers case proposed the addition of an arbitration agreement as a change in the terms of the parties' relationship that would be effective unless rejected by the card holder. The United States District Court for the District of Montana, applying Montana law, determined that MBNA had "'no power to cause the silence of the offeree to operate as an acceptance when the offeree does not intend it to do so.'" Id. at * 3, quoting Joseph M. Perillo, Corbin on Contracts § 3.18 (1993 & Supp. Fall 2000), at 407-08. The analysis in Myers is, in our view, of minimal value here because it does not address Virginia law. Moreover, unlike the plaintiff in Myers, Aronson continued to use his Capital One credit card following the Notice of the change in the terms of the credit card agreement. Where cardholders have so acted, the courts have viewed such conduct as a manifestation of "assent to the new term[s]." See, e.g., Perry v. FleetBoston Fin. Corp., 2004 WL 1508518, *5 (E.D. Pa. July 6, 2004); Marsh, 103 F.Supp.2d at 918.

     The district court should find that there exists a valid arbitration agreement since Aronson agreed to the terms of the amended Customer Agreement by failing to exercise his option to reject the arbitration agreement and by continuing to use his

11

Capital One credit card following receipt of the Notice of the proposed changes in the terms of the Customer Agreement.

Lastly, Aronson argues that the arbitration agreement is unconscionable. The defense of unconscionability may be applied to invalidate an arbitration agreement without contravening Section 2 of the Arbitration Act.[4] Doctors' Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

"Virginia law defines an unconscionable contract as one that "'no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other.'" Gardner v. Ryan's, 2001 WL 1352113, * 2 (W.D. Va. 2001), quoting Smyth Bros.-McCleary-McClellan Co. v. Beresford, 104 S.E. 371, 382 (Va. 1920). See also, Koval v. Liberty Mut. Ins. Co., 531 A.2d 487, 491 (Pa. Super. 1987)("The test of "unconscionability" is two-fold. First, one of the parties to the contract must have lacked a "meaningful choice" about whether to accept the

---

[4]Section 2 provides as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

provision in question.  Second, the challenged provision must "unreasonably favor" the other party to the contract.")

Aronson argues, without factual or case law support, that the arbitration provision at issue here is a contract of adhesion.  In our view, the agreement is not as unilateral or without meaningful choice as Aronson would have us find.  Aronson had the choice to reject or opt out of the arbitration agreement. He chose not to take advantage of that option.

Aronson also argues that it is unconscionable for an arbitration provision relating to a credit card issued by one company to be enforceable with respect to a credit card agreement originated by another, unrelated company, particularly where, as here, the Chase Account was closed approximately eleven years prior to the mailing of the Capital One Notice.  Aronson argues that the arbitration clause is so broad and overreaching that it would bring any type of dispute at any time in the future within its ambit, including, for example, twenty years from now an automobile accident between Aronson and a Capital One vehicle or driver, or a Chase Manhattan vehicle or driver.  We find this argument unconvincing.  Defendants are not attempting to compel arbitration of a tort claim wholly unrelated to their business relationship with Aronson.  Defendants are seeking to enforce an arbitration agreement between Defendants and Aronson with respect

13

to claims that Aronson has against Defendants regarding their collection activities on a debt Aronson owes Capital One.

The district court should find that the arbitration agreement at issue here does not meet the test for unconscionability.  The agreement is not so unfair or lacking in meaningful choice or so unreasonably favorable to Capital One that it should be revoked as unconscionable.

CONCLUSION

For the above stated reasons, the district court should grant the motion to compel arbitration and stay the case in the interim.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated:   26 August, 2005

14

cc:   Clayton S. Morrow, Esquire
      Morrow & Morrow, PC
      304 Ross Street
      Mitchell Building, 7th Floor
      Pittsburgh, PA 15219

      Rhonda J. Sudina, Esquire
      Robb Leonard Mulvihill
      2300 One Mellon Center
      Pittsburgh, PA 15219

      James R. McGuire, Esquire
      Rebekah E. Kaufman, Esquire
      Morrison & Foerster LLP
      425 Market Street
      San Francisco, CA 94105